UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------- X
  HADAR GAHFI,                              :
                                       :
                Plaintiff,        :
                                     :    **MEMORANDUM DECISION AND**
        -against-            :    **ORDER**
                                     :
  NEW YORK CITY DEPARTMENT OF    :   23-cv-1782 (BMC)
  EDUCATION and SHENEAN LINDSAY,   :
                                     :
               Defendants.    :
--------------------------------------------------------- X

**COGAN**, District Judge.

      This religious and disability discrimination suit is before the Court on defendants' motion to dismiss. For the reasons set forth below, defendants' motion is granted in part and denied in part.

**SUMMARY OF AMENDED COMPLAINT**

      Plaintiff practices Hasidic Judaism. She has been employed at the defendant Department of Education ("DOE") since 1997. More than twenty years ago, she was assigned to P.S. 191 as "educational evaluator." By 2018, she had risen to the level of principal of the school, a position she held until January 2023.

      Her problems stem from her relationship with the manager who was appointed over her in 2021, defendant Shenean Lindsay, a Community Superintendent for DOE District 17, which includes P.S. 191. It is alleged that Lindsay (and therefore DOE) discriminated against plaintiff based on her religion by making disparaging remarks about how Hasidic women had to limit their contact with men, including telling plaintiff to "get thick skin and get over herself" and that plaintiff would be subject to disciplinary action if she refused to meet with a male teacher alone. Lindsay also did not provide plaintiff with kosher meals at district meetings and conferences.

Furthermore, defendants refused to assign plaintiff an assistant principle to shoulder some of her workload, despite the fact that other schools with non-Hasidic principals were assigned assistant principals.  And Lindsay ordered plaintiff to teach summer school, even though that activity was generally assigned to assistant principals.  When plaintiff refused to teach summer school without an assistant principal, Lindsay stated "okay, if that's the way you want this, two people can play that game.'"  Finally, as it relates to plaintiff's religious discrimination claim, defendants extended her probationary period and denied her tenure.

Plaintiff also claims that defendants created a hostile work environment and that she was constructively discharged.  She makes these claims based on the above allegations, as well as Lindsay's denial of plaintiff's claim for Line of Duty Injury ("LODI") benefits related to a work-related slip and fall injury, her summoning of plaintiff to a disciplinary meeting while plaintiff was on leave, and Lindsay's neglect of plaintiff's complaints about a teacher around whom plaintiff felt unsafe, Mr. Burgher.

Plaintiff injured herself at school while assessing damages from Hurricane Ida, suffering a fractured pelvis and a tear in her hip.  Her injury caused her to have trouble walking, standing, sitting, and going to the bathroom.  Plaintiff underwent two surgeries and used a cane or a wheelchair to get around.  Plaintiff made a claim for LODI benefits based on this injury, which Lindsay denied.  Lindsay informed plaintiff that she needed to report to work without any reasonable accommodation within five days of denying plaintiff's request.  Plaintiff was forced to use 203 of her own vacation (CAR) days, which she accumulated over 25 years.  DOE Human Resources approved plaintiff's use of these CAR days to take medical leave for the entire school year based on her injury, but it does not appear that defendants ever approved plaintiff's LODI

2

benefits claim, which would have allowed plaintiff to take medical leave without using her CAR days.

Lindsay refused to acknowledge that Human Resources had approved plaintiff's medical leave, and wrote a letter to DOE stating that plaintiff was taking unauthorized leave. While plaintiff was on authorized leave, Lindsay ordered plaintiff to report to a meeting to discuss plaintiff's time and attendance, telling plaintiff that the meeting might result in disciplinary action. Plaintiff does not allege that any disciplinary action actually resulted from this meeting.

Plaintiff took several actions to protest or oppose defendants' above-described conduct. On November 19, 2021, plaintiff filed a notice of claim alleging discrimination and served it on defendants.[1] The notice of claim alleged religious and disability discrimination, among other claims not relevant here. Plaintiff recited DOE's failure to assign her an assistant principal, which "has contributed to an unsafe working environment;" Lindsay's "trying to force" plaintiff to work summer school; Lindsay's failure to provide kosher food; her comments about plaintiff's only having limited contact with men; Lindsay's denial of plaintiff's LODI claim and demand that plaintiff report to work "on the next school day;" and her refusal to investigate or otherwise address plaintiff's complaints against Burgher.

Plaintiff also filed a dual complaint with the New York State Division of Human Rights ("NYSHDR") and the U.S. Equal Employment Opportunity Commission ("EEOC"); contacted DOE's District 17 attorney, her union, and Lindsay directly, requesting a transfer or work from home accommodation based on her perception of a hostile work environment and retaliation; and filed a complaint with the New York City School District Special Commissioner of

---

[1] Plaintiff lists the date of her notice of claim as November 19, 2022 in her amended complaint. But the notice of claim plaintiff attached to her amended complaint is dated November 19, 2021, and so is the verification of the notice, which was sworn before a notary public on November 19, 2021.

Investigation.  In addition, she filed four complaints with the DOE Office of Equal Opportunity and Diversity Management ("OEO"), including one on April 20, 2022 alleging religious and disability discrimination as well as a hostile work environment.

Based on the above allegations, plaintiff brings the following claims: religious discrimination in violation of Title VII, the New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL"); hostile work environment in violation of Title VII, the NYSHRL, and the NYCHRL; disability discrimination in violation of the Americans with Disabilities Act ("ADA"), the NYSHRL, and the NYCHRL; and retaliation in violation of Title VII, the ADA, the NYSHRL, and the NYCHRL.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for failure to state a claim upon which relief can be granted.  In deciding a motion under Rule 12(b)(6), the Court must "constru[e] the complaint liberally, accept[ ] all factual allegations in the complaint as true, and draw[ ] all reasonable inferences in the plaintiff's favor." Elias v. Rolling Stone LLC, 872 F.3d 97, 104 (2d Cir. 2017) (quoting Chase Grp. All. LLC v. City of New York Dep't of Fin., 620 F.3d 146, 150 (2d Cir. 2010)).  To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007), and to "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Determining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.

"In certain circumstances, the court may permissibly consider documents other than the complaint in ruling on a motion under Rule 12(b)(6)." Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007). "When determining the sufficiency of plaintiff['s] claim for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in [the] complaint, documents attached to the complaint as an exhibit or incorporated in it by reference, matters of which judicial notice may be taken, or documents either in plaintiff['s] possession or of which plaintiff[ ] had knowledge and relied in bringing suit." Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993). Additionally, "[i]n employment discrimination cases, courts may consider filings with state administrative agencies or the EEOC to the extent that a complaint necessarily rests upon them." Parke v. Assist Ambulance, No. 23-cv-9066, 2025 WL 513266, at *4 (E.D.N.Y. Feb. 17, 2025) (citing Littlejohn v. City of New York, 795 F.3d 297, 305 n.3 (2d Cir. 2015)).

## DISCUSSION

### I.    Notice of Claim Requirement

Defendants contend that plaintiff's notice of claim alleges only discrimination, requiring dismissal of her state law hostile work environment, retaliation, and failure to accommodate claims. This argument fails as to plaintiff's hostile work environment and failure to accommodate claims, but this Court grants dismissal of plaintiff's state law retaliation claims.

Section 3813 of New York's Education Law requires a plaintiff to file a notice of claim before bringing an action against DOE or its officers. N.Y. Educ. Law § 3813(1); see also N.Y. Gen. Mun. Law § 50-e. This requirement only applies to state law claims, but it applies to such claims even if they are brought in federal court. Brown v. Cnty. of Westchester, No. 22-cv-6146, 2024 WL 21937, at *10 (S.D.N.Y. Jan. 2, 2024); Smith v. New York City Dep't of Educ., 808 F. Supp. 2d 569, 578 (S.D.N.Y. 2011). The notice of claim must be "presented to the governing

body of [the] district or school within three months after the accrual of [the] claim." N.Y. Educ. Law § 3813(1).[2]

"[A] notice of claim must contain sufficient information to permit the [defendant] to conduct an adequate investigation of the allegations." Hartley v. Rubio, 785 F. Supp. 2d 165, 185 (S.D.N.Y. 2011) (citations omitted) (cleaned up). To permit a defendant to conduct an adequate investigation, a notice of claim must include "the nature of the claim, the time when, the place where and the manner in which the claim arose." Richard v. New York City Dep't of Educ., No. 16-cv-957, 2022 WL 4280561, at *17 (E.D.N.Y. Sept. 15, 2022) (quotation omitted). These requirements "need not be stated with literal nicety or exactness. . . . Instead, the question is merely whether the notice of claim includes information sufficient to enable the city to investigate." Parise v. New York City Dep't of Sanitation, 306 F. App'x 695, 697 (2d Cir. 2009) (quotations omitted) (cleaned up). "Any claim for relief or theory of liability not directly or indirectly mentioned in the notice of claim against the municipality may not be included in subsequent lawsuits." Miranda v. S. Country Cent. Sch. Dist., 461 F. Supp. 3d 17, 30 (E.D.N.Y. 2020) (citation omitted).

Here, plaintiff's notice contained sufficient information from which defendants could adequately investigate and understand plaintiff's hostile work environment and failure to accommodate claims, but not her retaliation claims. As discussed below, under the NYCHRL

---

[2] "[I]n some instances courts have allowed a complaint of discrimination filed with the EEOC or the NYSDHR to substitute for the actual notice of claim, [but] they have held plaintiffs to the requirement to serve on the DOE's governing board." Bacchus v. New York City Dep't of Educ., 137 F. Supp. 3d 214, 234 (E.D.N.Y. 2015). Plaintiff fails to allege that she served her dual NYSDHR/EEOC complaint or any of her four OEO complaints on the appropriate governing body, or that she did so within the requisite time period. Accordingly, this Court will not consider any of these filings as substitute notices of claim, and will only consider the sufficiency of plaintiff's actual notice of claim. See Richard v. New York City Dep't of Educ., No. 16-cv-957, 2017 WL 1232498, at *21 (E.D.N.Y. Mar. 31, 2017) (holding that because plaintiff "does not allege that he served his EEOC charge on any appropriate entity or individual, or that he did so within the time period required . . . Plaintiff's EEOC charge does not satisfy the notice-of-claim requirements" (collecting cases)).

and (at least for purposes of this motion) the NYSHRL, all a plaintiff must show to prevail on a hostile work environment claim is that she was treated less well because of her religion.  In her notice of claim, plaintiff included allegations that she was not assigned an assistant principal and thus she was ordered to work summer school, but that similarly situated principals who were not Hasidic were not subjected to this treatment.  Plaintiff also included her complaints about Lindsay's failure to provide kosher food and Lindsay's denigrating comments about plaintiff's refusal to shake hands with men due to her religion.  Moreover, plaintiff referenced that she was experiencing an "unsafe working environment."  This Court will not bar a claim based on plaintiff's use of the word "unsafe" instead of "hostile."  The information plaintiff provided was more than sufficient to enable defendants to investigate plaintiff's NYSHRL and NYCHRL hostile work environment claims.

Plaintiff also included sufficient information in her notice of claim to allow defendants to investigate her failure to accommodate claim.  Plaintiff's notice of claim put defendants on notice that plaintiff requested an accommodation in the form of her LODI benefits claim, it was denied, and no other accommodation was offered to plaintiff ("Respondents . . . demand[ed] that Claimant return to work on the next school day.").  This level of detail would have allowed defendants to investigate plaintiff's failure to accommodate claim.

In contrast, plaintiff made no reference to any retaliatory actions by defendants, so defendants could not have investigated such claims based on plaintiff's notice of claim.  The fact that many of plaintiff's allegations related to her retaliation claims arose after she filed her notice of claim does not change this analysis.  Plaintiff needed to file a new notice of claim, within three months of the events giving rise to her retaliation claims, to be able to bring these claims.  See Everett v. New York City Dep't of Educ., No. 21-cv-7043, 2023 WL 5629295, at *10

(S.D.N.Y. Aug. 31, 2023).  Accordingly, plaintiff's retaliation claims based on religion and

disability under both the NYSHRL and NYCHRL are dismissed.

## II.   <u>Religious Discrimination</u>

### A.   Title VII

Title VII makes it unlawful for an employer "to discriminate against any individual . . .

because of such individual's . . . religion."  42 U.S.C. § 2000e–2(a)(1).  To establish a *prima*

*facie* case of employment discrimination under Title VII, a plaintiff must ultimately prove that

"(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an

adverse employment action; and (4) the circumstances give rise to an inference of

discrimination."  <u>Weinstock v. Columbia Univ.</u>, 224 F.3d 33, 42 (2d Cir. 2000) (citing

<u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973)).  Because Title VII "does not

create liability in individual supervisors and co-workers who are not the plaintiffs' actual

employers," <u>Littlejohn</u>, 795 F.3d at 313 (quoting <u>Raspardo v. Carlone</u>, 770 F.3d 97, 113 (2d Cir.

2014)), plaintiff brings this claim only against her employer, DOE.

At the motion to dismiss stage, a plaintiff "is not required to plead a *prima facie* case

under <u>McDonnell Douglas</u>."  <u>Vega v. Hempstead Union Free Sch. Dist.</u>, 801 F.3d 72, 84 (2d Cir.

2015).  Instead, "[t]he facts alleged must [only] give plausible support to the reduced

requirements that arise under <u>McDonnell Douglas</u> in the initial phase of a Title VII litigation."

<u>Littlejohn</u>, 795 F.3d at 311.  Specifically, plaintiff must plead facts that plausibly allege that "the

plaintiff is a member of a protected class, was qualified, suffered an adverse employment action,

and has at least minimal support for the proposition that the employer was motivated by

discriminatory intent."  <u>Id.</u>

The parties do not dispute that the first two requirements are satisfied, that plaintiff is a

member of a protected class and that she was qualified for her position.  Therefore, this Court

considers whether plaintiff has adequately pled that she suffered an adverse employment action and whether she has minimal support for the assertion that the adverse employment action(s) were motivated by discrimination.

i. *Adverse Employment Action*

A plaintiff plausibly alleges an adverse employment action if she "endures a materially adverse change in the terms and conditions of employment" that is "more disruptive than a mere inconvenience or an alteration of job responsibilities." Raspardo, 770 F.3d at 125-26 (internal quotation marks and quotations omitted). Examples include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." Feingold v. New York, 366 F.3d 138, 152 (2d Cir. 2004) (quotation omitted). But a "bruised ego," a "demotion without change in pay, benefits, duties, or prestige," or "reassignment to [a] more inconvenient job" are all insufficient to constitute a tangible or materially adverse employment action. Brand v. New Rochelle City Sch. Dist., No. 19-cv-7263, 2022 WL 671077, at *9 (S.D.N.Y. Mar. 7, 2022) (citing Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998)). Such inconveniences do not constitute adverse employment actions unless they are accompanied by "some attendant negative result, such as a deprivation of a position or opportunity." Id. (quoting Hill v. Rayboy-Brauestein, 467 F. Supp. 2d 336, 354 (S.D.N.Y. 2006) (internal citation and quotations omitted)).

Plaintiff argues that she has adequately pled that DOE took the following adverse employment actions against her: (1) creation of a hostile work environment, (2) constructive discharge, (3) refusal to assign an assistant principal, and (4) denial of tenure and extension of probationary period. Although this Court does not find that plaintiff had adequately pled that

defendants created a hostile work environment or constructively discharged her, see infra Section III(A), plaintiff has plausibly alleged the other two adverse employment actions she raises.

Regarding DOE's refusal to assign plaintiff an assistant principal and the resulting increase in plaintiff's workload, "'a disproportionately heavy workload' can constitute an adverse employment action," Pothen v. Stony Brook Univ., 211 F. Supp. 3d 486, 494 (E.D.N.Y. 2016) (quoting Feingold, 366 F.3d at 152-53), but only when "a plaintiff is given a workload heavier that similarly situated employees." Kirkland-Hudson v. Mount Vernon City Sch. Dist., 665 F. Supp. 3d 412, 452 (S.D.N.Y. 2023) (quoting Shukla v. Deloitte Consulting LLP, No. 19-cv-10578, 2020 WL 8512852, at *8 (S.D.N.Y. Nov. 17, 2020), report and recommendation adopted, 2021 WL 1131507 (S.D.N.Y. March 24, 2021)). Plaintiff has sufficiently identified similarly situated employees to survive a motion to dismiss, in the form of principals at other schools "who were not of Hasidic faith" and who "were assigned assistant principals," including "the principals of P.S. 394K and P.S. 399K," as well as "the substitute principal assigned to [plaintiff's] school" while plaintiff was out on medical leave. See Buon v. Spindler, 65 F.4th 64, 70, 84 (2d Cir. 2023) (holding that plaintiff adequately pled that she was subject to disparate treatment by comparing her treatment to "other middle school principals . . . who were not African American or West Indian"). To the extent issues remain as to whether the principals plaintiff identifies are sufficiently similar, "[o]rdinarily, whether two employees are similarly situated presents a question of fact, rather than a legal question to be resolved on a motion to dismiss." Id. at 85 n.7 (quotation and citation omitted). Thus, plaintiff has adequately alleged an adverse employment action in the form of a disproportionately heavy workload.

DOE's denial of tenure and extension of plaintiff's probationary period also constitutes an adverse employment action:

Extending an employment relationship by one year by itself may not qualify as an adverse employment action. But when coupled with the denial of tenure, it is assuredly an adverse employment action. During the fourth year of probationary employment, a teacher can be fired at any time for any lawful reason. N.Y. Educ. Law § 2573(l)(a). But if granted tenure, the teacher may be fired only for cause. Id. §§ 2573(5)(a), 3020-a. The denial of tenure after three years, when a teacher was otherwise eligible for tenure, does not become any less an adverse action because the teacher is provided with another year of probationary employment.

Mace v. Marcus Whitman Cent. Sch. Dist., No. 11-cv-6574, 2015 WL 5682665, at *9

(W.D.N.Y. Sept. 25, 2015), aff'd, 677 F. App'x 26 (2d Cir. 2017) (quoting Tolbert v. Smith, 790

F.3d 427, 436 (2d Cir.2015)).

## ii. *Discriminatory Intent*

"At the pleadings stage . . . a plaintiff must allege that the employer took adverse action

against her at least in part for a discriminatory reason." Vega, 801 F.3d at 87 (citing Littlejohn,

795 F.3d at 310). "An inference of discrimination can arise from circumstances including, but

not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading

terms; . . . the more favorable treatment of employees not in the protected group; or the sequence

of events leading to the plaintiff's discharge." Littlejohn, 795 F.3d at 312 (quotation omitted).

Plaintiff includes sufficient allegations of discriminatory intent related to DOE's failure to

provide her with an assistant principal based on her pleading that other, non-Hasidic principals

received assistant principals.[3]

Plaintiff alleges that DOE's denial of tenure and extension of her probationary period

were motivated at least in part by discriminatory intent based on (1) Lindsay's comment that

---

[3] Defendants argue that plaintiff's allegations "ignore[ ]" her "knowledge of the budget restraints on hiring an Assistant Principal." This argument "displays a misapprehension of Plaintiff's burden at this stage of the proceedings." Levy v. Legal Aid Soc'y, 408 F. Supp. 3d 209, 215 (E.D.N.Y. 2019). "To survive a motion to dismiss . . . a plaintiff is not required to plead a prima facie case of discrimination, and any inquiry into any non-discriminatory reasons for a defendant's conduct is reserved for summary judgment or trial." Id. (citing Vega, 801 F.3d at 84).

plaintiff needed to "get thick skin and get over herself" in discussing plaintiff's "religious practices of not shaking hands with men and not being allowed to be in a room alone with a man," (2) Lindsay's intentional failure to provide plaintiff with kosher food at meetings and conferences, (3) the fact that plaintiff was treated differently than other similarly situated principals who were not Hasidic (including the fact that plaintiff was not assigned an assistant principal and was ordered to work summer school), and (4) Lindsay's threat towards plaintiff when she refused to work summer school, even though similarly situated principals who were not Hasidic were not ordered or expected to work summer school. Additionally, plaintiff pleads that Lindsay threatened her with disciplinary action if she did not meet with a male teacher alone, despite plaintiff's religious practice prohibiting this.

Even though these allegations may not all rise to the level of adverse employment actions in and of themselves, they do evince several instances of disparate treatment of plaintiff by her supervisor based on her religion. Such a "series of instances of disparate treatment in the workplace," including allegations that plaintiff was "subjected to job requirements and to discipline that was different than employees outside her protected class" are sufficient to "support a plausible inference of intentional discrimination" as to DOE's extension of plaintiff's probationary period and denial of tenure. Buon, 65 F.4th at 83-84.

Plaintiff has thus plausibly alleged a Title VII religious discrimination claim based on her disproportionately heavy workload and denial of tenure.

## B.    NYSHRL and NYCHRL

Both the NYSHRL and the NYCHRL provide that "[i]t shall be an unlawful discriminatory practice . . . [f]or an employer" to discriminate against an individual because of her "creed." N.Y. Exec. Law § 296(1)(a); N.Y.C. Admin. Code § 8-107(1)(a)(3). To survive a motion to dismiss a NYCHRL discrimination claim, a plaintiff must plead that "she was treated

less well, at least in part for a discriminatory reason." <u>Verne v. New York City Dep't of Educ.</u>, No. 21-cv-5427, 2022 WL 4626533, at *17 (S.D.N.Y. Sept. 30, 2022).  The NYSHRL was amended in 2019 "to direct courts to construe the NYSHRL, like the NYCHRL, 'liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws including those laws with provisions worded comparably to the provisions of [the NYSHRL] have been so construed.'"  <u>Nezaj v. PS450 Bar & Rest.</u>, 719 F. Supp. 3d 318, 335 n.3 (S.D.N.Y. 2024) (quoting N.Y. Exec. Law § 300).  Although this amendment made clear that NYSHRL claims should be analyzed separately from, and more liberally than, Title VII claims, "it is as of yet unclear whether these two standards are co-extensive, or whether the NYSHRL requires something in between federal and local law for discrimination claims."  <u>Id.</u> (citation omitted).

Regardless of the exact standard to be applied in the NYSHRL context, because plaintiff has met the higher Title VII standard for pleading a claim of religious discrimination, her claim under the "more lenient" NYSHRL and NYCHRL also survive.

### III.    Hostile Work Environment

#### A.    Title VII

A hostile work environment is one "permeated with discriminatory intimidation, ridicule, and insult, . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21 (1993) (internal quotation marks and quotations omitted).  The "mere utterance of an epithet which engenders offensive feelings in an employee . . . does not sufficiently affect the conditions of employment to implicate Title VII."  <u>Id.</u> (quotation omitted) (cleaned up).

As with plaintiff's religious discrimination claim, individuals who are not a plaintiff's actual employers are not subject to Title VII liability, so plaintiff brings this claim only against DOE.  When a plaintiff's alleged harasser is her supervisor, as long as "the supervisor's

harassment culminates in a tangible employment action, the employer is strictly liable." <u>Vance v. Ball State Univ.</u>, 570 U.S. 421, 424 (2013).

At the pleading stage, a plaintiff must allege that "the complained of conduct: (1) is objectively severe or pervasive – that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's" religion. <u>Patane v. Clark</u>, 508 F.3d 106, 113 (2d Cir. 2007) (quotation omitted) (cleaned up). "Factors that a court might consider in assessing the totality of the circumstances include: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is threatening and humiliating, or a mere offensive utterance; and (4) 'whether it unreasonably interferes with an employee's work performance.'" <u>Id.</u> (quoting <u>Harris</u>, 510 U.S. at 23). "Ultimately . . . a plaintiff need only plead facts sufficient to support the conclusion that she was faced with harassment of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse, and [the Second Circuit has] repeatedly cautioned against setting the bar too high." <u>Id.</u> (quotation omitted) (cleaned up).

As the basis for plaintiff's hostile work environment, she claims that (1) Lindsay commented that plaintiff needed to "get thick skin and get over herself" in discussing plaintiff's religious practice of limiting contact with men and that Lindsay threatened her with disciplinary action on this basis, (2) Lindsay refused to provide plaintiff with kosher food at meetings and conferences, (3) plaintiff was not assigned an assistant principal when other similarly situated principals received assistant principals, (4) Lindsay ordered her to work summer school and threatened her after she refused to do so, (5) Lindsay denied her LODI application and ordered her to report to work despite her disability, (6) Lindsay required plaintiff to attend a disciplinary

14

meeting while plaintiff was on leave and told plaintiff that the meeting might result in disciplinary action, (7) defendants extended her probationary period and denied her tenure, and (8) Lindsay ignored plaintiff's complaints against Burgher and her request for a transfer away from him, "rendering Plaintiff's work environment vulnerable and unsafe."

These allegations do not give rise to what a reasonable person would consider a hostile or abusive environment, either based on plaintiff's religion or her disability (as seems to be the basis for some of plaintiff's complained of conduct). Over the year and a half during which plaintiff alleges she was subject to a hostile work environment, she pleads, generously construed, two separate offensive comments that Lindsay made about her religion and three threats of unspecified discipline, none of which plaintiff alleges came to pass. Lindsay's other actions, of extending plaintiff's probation, denying her tenure, and not adequately accommodating her (by failing to provide her kosher food, denying her LODI claim, not assigning her an assistant principal, and ignoring her complaints against her aggressive employee), although potentially actionable in the context of other claims, do not qualify as harassment or abuse, even viewed in the totality of the circumstances. Because plaintiff fails to plead that she was subject to "objectively severe or pervasive" harassment or abuse, Patane, 508 F.3d at 113, her hostile work environment claim under Title VII is dismissed.

To state a constructive discharge claim under Title VII, a plaintiff must allege that "[she] was discriminated against by [her] employer to the point where a reasonable person in [her] position would have felt compelled to resign." Green v. Brennan, 578 U.S. 547, 555 (2016). "[A] constructive discharge cannot be shown simply by the fact that the employee was unhappy with the nature of her assignments or criticism of her work, or where the employee found the working conditions merely difficult or unpleasant." Green v. Town of E. Haven, 952 F.3d 394,

404 (2d Cir. 2020) (internal quotations omitted).  Rather, "[a] constructive discharge occurs

when an employer 'intentionally creates a work atmosphere so intolerable that [the plaintiff] is

forced to quit involuntarily.'"  Borski v. Staten Island Rapid Transit, 413 F. App'x 409, 411 (2d

Cir. 2011) (quoting Terry, 336 F.3d at 151-52).

      This "standard is higher than the standard for establishing a hostile work environment."

Fincher v. Depository Trust and Clearing Corp., 604 F.3d 712, 725 (2d Cir. 2010) (reasoning that

because the plaintiff did not establish a hostile work environment, "her claim of constructive

discharge also fails").  As plaintiff has not pled sufficient facts to establish that a hostile work

environment existed, her allegation of constructive discharge also fails, whether viewed as an

adverse employment action as part of plaintiff's religious discrimination or disability

discrimination claims, or viewed or a separate claim.

### B.    NYSHRL and NYCHRL

      In contrast to the Title VII standard, the NYSHRL provides for liability on a claim of

hostile work environment based on a plaintiff being "subjected to 'inferior terms, conditions or

privileges of employment because of the individual's membership in one or more . . . protected

categories.'"  Wheeler v. Praxair Surface Techs., Inc., 694 F. Supp. 3d 432, 451 (S.D.N.Y. 2023)

(quoting N.Y. Exec. Law. § 296(1)(h)) (citations omitted).  To maintain a hostile work

environment claim under the NYCHRL, "all that is required . . . is unequal treatment based upon

membership in a protected class."  Spencer v. Glob. Innovative Grp., LLC, No. 17-cv-7604,

2023 WL 6633860, at *9 (S.D.N.Y. Oct. 12, 2023) (internal quotation marks and quotations

omitted).  This is the same standard as the NYCHRL's discrimination standard.  See Adams v.

Equinox Holdings, Inc., 662 F. Supp. 3d 444, 459 n.11 (S.D.N.Y. 2023), aff'd, No. 23-608, 2024

WL 1787108 (2d Cir. April 25, 2024) (citation omitted).  In other words, if a plaintiff makes out

a religious discrimination claim under the NYCHRL, she has also made out a hostile work environment claim under that statute.

As discussed in the religious discrimination context, "case law . . . has yet to definitively resolve whether the NYSHRL's liability standard is now coextensive with that of the NYCHRL, or whether it requires more, so as to impose a standard between federal and city law." Kulick v. Gordon Prop. Grp., LLC, No. 23-cv-9928, 2025 WL 448333, at *8 (S.D.N.Y. Feb. 7, 2025) (quotation omitted) (collecting cases). Because "the amended NYSHRL standard is, at the very least, closer to the NYCHRL standard," and "in order to view the Amended Complaint in the light most favorable to Plaintiff," at this motion to dismiss stage the Court will apply the NYSHRL standard as in alignment with the NYCHRL. Id. (internal quotation marks and quotation omitted).

Having already found that plaintiff has plausibly alleged a religious discrimination claim under the NYSHRL and NYCHRL, the Court also finds, based on plaintiff's pleadings of adverse employment actions motivated by discriminatory intent, that her claims of hostile work environment under the NYSHRL and the NYCHRL survive defendant's motion to dismiss.

Plaintiff's constructive discharge allegation, however, viewed as an adverse employment action or a separate claim, cannot survive. Under the NYCHRL, "constructive discharge . . . require[s] deliberate actions taken by the employer sufficient to cause a reasonable person to feel compelled to resign." Tulino v. City of New York, 813 F. App'x 725, 727 (2d Cir. 2020) (summary order). "[E]ven while New York state appellate courts have not determined the precise standard for constructive discharge under the NYCHRL, they tend to dispose of constructive discharge claims using language that 'mirrors the federal standard.'" Thompson v. Shutterstock, Inc., No. 23-cv-4155, 2024 WL 2943813, at *22 (S.D.N.Y. June 10, 2024) (quoting

Tulino, 813 F. App'x at 727 n.2.).  The NYSHRL, analyzed either in total alignment with the NYCHRL or as drawing a middle ground between the NYCHRL and federal law, would thus be construed similarly.  Drawing all reasonable inferences in favor of plaintiff and viewing the totality of the circumstances, plaintiff has not made out a NYCHRL or NYSHRL constructive discharge claim for all of the reasons set forth in Section III(A).

### IV.    Disability Discrimination

Disability discrimination claims "may be brought under a theory of adverse employment action or of failure to provide reasonable accommodation."  Kirkland-Hudson, 665 F. Supp. 3d at 457 (citing McMillan v. City of New York, 711 F.3d 120, 125-26 (2d Cir. 2013)).  Here, plaintiff brings claims of disability discrimination under both theories, which she alleges constitute violations of the ADA, the NYSHRL, and the NYCHRL.  Because individual employees are not subject to liability under the ADA, Yerdon v. Poitras, 120 F.4th 1150, 1155 (2d Cir. 2024), plaintiff brings her ADA claims only against DOE.

### A.    Adverse Employment Action Theory

The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to . . . terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  Just as with plaintiff's religious discrimination claim, "[c]laims alleging disability discrimination in violation of the ADA are subject to the burden-shifting analysis originally established by the Supreme Court in McDonnell Douglas[.]"  McMillan, 711 F.3d at 125 (quotation omitted).  To establish a *prima facie* case of employment discrimination under the ADA, a plaintiff must ultimately prove that "(1) the defendant is covered by the ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of

his disability or perceived disability." Richards v. Dep't of Educ. of City of New York, No. 21-cv-338, 2022 WL 329226, at *13 (S.D.N.Y. Feb. 2, 2022) (quoting Kinneary v. City of New York, 601 F.3d 151, 156 (2d Cir. 2010)). "At the pleading stage, a plaintiff 'need only give plausible support to a minimal inference of discriminatory motivation' and 'need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination.'" Id. (quoting Littlejohn, 795 F.3d at 311) (citing Dawson v. New York City Transit Auth., 624 F. App'x 763, 767 (2d Cir. 2015)).

The parties do not dispute that DOE is covered by the ADA or that plaintiff was qualified to perform the essential functions of her job. Nor is it seriously disputable that plaintiff suffered from a disability within the meaning of the ADA. The ADA defines disability as, *inter alia*, "a physical or mental impairment that substantially limits one or more major life activities," such as "caring for oneself, performing manual tasks . . . walking, standing, lifting, [and] bending[.]" 42 U.S.C. §§ 12102(1)(A), (2)(A). Plaintiff has more than plausibly alleged that she suffered from a disability as defined by the ADA, stating in the amended complaint that "[b]ecause of her right hip fracture avulsion and broken pelvis, Plaintiff was in constant pain when walking, standing, sitting, and going to the bathroom . . . and used a cane at times and a wheelchair other times." In light of this statement, the Court finds baseless defendants' argument that plaintiff "failed to state how [sic] the alleged impact of her injuries on major life activities."

The real question is whether plaintiff has plausibly alleged a minimal inference of discriminatory motivation based on her disability for an adverse employment action. The adverse employment actions plaintiff states were motivated at least in part by disability discrimination are DOE's denial of "her medical leave requests, fail[ure] to accommodate her disability, and summoning her into a disciplinary meeting while on medical leave regarding her

attendance." This Court will analyze plaintiff's failure to accommodate claim separately, <u>see</u> <u>infra</u> Section IV(B), not as an adverse employment action in and of itself. <u>See</u> <u>Kirkland-Hudson</u>, 665 F. Supp. 3d at 457 (failure to accommodate "does not equate to an adverse employment action in the disability discrimination context" (internal quotation marks and quotation omitted)).

Scheduling a disciplinary meeting and threatening disciplinary action are not adverse employment actions unless they are "accompanied by a[ ] materially adverse consequences to the conditions of Plaintiff's employment such as demotion, diminution of wages, or other tangible loss." <u>Richards</u>, 2022 WL 329226, at *8, *13 (citing <u>Brown v. City of New York</u>, 2014 WL 5394962, at *8 (S.D.N.Y. Oct. 23, 2014), <u>aff'd</u> 622 F. App'x 19 (2d Cir. 2015)) ("The definition of an 'adverse employment action' in the context of disability-based discrimination is the same as in the context of [Title VII] discrimination." (quotation omitted)). Plaintiff has not alleged any accompanying adverse consequence to the conditions of her employment, rendering the summoning of plaintiff to a disciplinary meeting while on medical leave an insufficient adverse employment action for the purposes of the ADA.

The denial of plaintiff's request for medical leave, however, was an adverse employment action. Although DOE approved plaintiff's medical leave for which she had to use her CAR days, it denied her request for LODI benefits, which would have allowed her to take medical leave without using her CAR days. Having to use CAR days during medical leave, instead of receiving paid medical leave, is "[i]n effect," placement on "unpaid leave." <u>Verne</u>, 2022 WL 4626533, at *9. And being forced to take unpaid leave based on DOE's denial of plaintiff's accommodation request "constitutes an adverse employment action." <u>Id.</u> (citation omitted).

Plaintiff also plausibly alleges that her placement on unpaid leave was because of her disability. Lindsay's summoning of plaintiff to a meeting while she was on approved leave to

discuss her time and attendance and informing plaintiff that the meeting might lead to disciplinary action, although not an adverse employment action itself, indicates a discriminatory motivation. Such a lack of regard for plaintiff's professed and acknowledged disability is sufficient to infer that Lindsay had an animus towards plaintiff based on her disability, which quite plausibly also motivated DOE's denial of plaintiff's request for LODI benefits. Thus, plaintiff's disability discrimination claim on a theory of an adverse employment action survives defendants' motion to dismiss.

Given that "the standard for pleading a disability discrimination claim under the NYSHRL and NYCHR is more lenient than the ADA standard," Weekes v. JetBlue Airways Corp., No. 21-cv-1965, 2022 WL 4291371, at *8 (E.D.N.Y. Sept. 16, 2022) (citing Jones v. New York City Transit Auth., 838 F. App'x 642, 644 n.1 (2d Cir. 2021)), plaintiff's claims under the NYSHRL and NYCHRL also survive.

### B. Failure to Accommodate Theory

Under a failure to accommodate theory of disability discrimination, plaintiffs must plead "(1) they are persons with a disability under the meaning of the statute in question; (2) an employer covered by the statute had notice of the disability; (3) with reasonable accommodation, the plaintiffs could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." Applewhite v. New York City Dep't of Educ., No. 21-cv-2928, 2024 WL 3718675, at *9 (E.D.N.Y. Aug. 8, 2024) (quotation omitted) (cleaned up). This standard is the same under the ADA, the NYSHRL, and the NYCHRL. Nieblas-Love v. New York City Hous. Auth., 165 F. Supp. 3d 51, 73 (S.D.N.Y. 2016) (collecting cases).

As discussed above, plaintiff has adequately pled that she is a person with a disability. Moreover, plaintiff's amended complaint makes clear that defendants had notice of her

disability.  Even though they denied her request for LODI benefits, they still approved her request to take medical leave using her CAR days for almost an entire school year, creating the inference necessary to survive a motion to dismiss that defendants knew that plaintiff was disabled.  This same factual allegation provides support for the assertion that, with reasonable accommodation, plaintiff could perform her job: despite being denied LODI benefits, plaintiff still was absent for almost the entire 2021 to 2022 school year, during which DOE instituted a substitute teacher at P.S. 191, and then plaintiff returned to perform her role as principal for the 2022 to 2023 school year.  "The ADA generally recognizes medical leaves as reasonable accommodations."  Rogers v. New York Univ., 250 F. Supp. 2d 310, 317 (S.D.N.Y. 2002) (citing 29 C.F.R. Part 1630, Appendix).  A medical leave with LODI benefits clearly could have been a reasonable accommodation here because plaintiff was able to resume her job after taking what was, in effect, unpaid leave for the same amount of time she would have received LODI benefits.  Finally, there is no dispute that defendants denied plaintiff's LODI benefits claim, thereby refusing to make her requested accommodation.

Defendants' assertion that plaintiff never formally requested or specified an accommodation is belied by plaintiff's allegation that she requested LODI benefits.  But even if true, the failure to request an accommodation would not change this Court's analysis.  See Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 135 (2d Cir. 2008) (Regardless of whether plaintiff has requested an accommodation, "an employer has a duty reasonably to accommodate an employee's disability if the disability is obvious – which is to say, if the employer knew or reasonably should have known that the employee was disabled.").

Accordingly, plaintiff has plausibly alleged disability discrimination claims under the ADA, NYSHRL, and NYCHRL, under both adverse employment action and failure to accommodate theories.

## V.      **Retaliation**

"To establish a *prima facie* case of retaliation, an employee must show (1) participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." Terry v. Ashcroft, 336 F.3d 128, 141 (2d Cir. 2003) (quotation omitted) (cleaned up). However, for a retaliation claim to survive a motion to dismiss, a plaintiff need only "plausibly allege that: (1) defendants discriminated – or took an adverse employment action – against [her], (2) because [s]he has opposed any unlawful employment practice." Vega, 801 F.3d at 90 (internal quotations omitted).  This same standard applies under Title VII and the ADA.  See id. at 89-90 (Title VII); Bernheim v. New York City Dep't of Educ., No. 19-cv-9723, 2021 WL 2619706, at *10 (S.D.N.Y. June 25, 2021), report and recommendation adopted, 2021 WL 4198126 (S.D.N.Y. Sept. 15, 2021) (ADA).

An adverse employment action in the context of a retaliation claim "covers a broader range of conduct than does the adverse-action standard for claims of discrimination," and is therefore "not limited to discriminatory actions that affect the terms and conditions of employment." Vega, 801 F.3d at 90.  An adverse employment action in this context includes any action that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006)).

At the motion to dismiss stage, "causation may be inferred from close temporal proximity." Chung v. City Univ. of New York, 605 F. App'x 20, 23 (2d Cir. 2015).  Although

there is no bright-line rule, "where a plaintiff relies on temporal proximity alone, the protected activity and adverse action must occur 'very close' together." Sealy v. State Univ. of New York at Stony Brook, 834 F. App'x 611, 614 (2d Cir. 2020) (quoting Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001)). "[A]dverse employment actions occurring approximately three months after protected activity are too attenuated to give rise to an inference of retaliation." Id. (citing Hollander v. Am. Cyanamid Co., 895 F.2d 80, 85-86 (2d Cir. 1990)).

It is not disputed that plaintiff filed several complaints and external charges, constituting protected activity. As alleged by plaintiff, the protected activity and adverse employment action closest in time to each other are plaintiff's April 20, 2022 OEO complaint, alleging religious and disability discrimination, and DOE's decision not to grant plaintiff tenure, of which plaintiff was informed on June 24, 2022. This two-month period is sufficiently short to satisfy the causation requirement at the motion to dismiss stage. See Dodd v. City Univ. of New York, 489 F. Supp. 3d 219, 247 (S.D.N.Y. 2020) ("Generally, to show causation through temporal proximity alone, courts in this Circuit require no more than two months to have passed between a protected activity and an adverse action." (citing Feliciano v. City of New York, No. 14-cv-6751, 2015 WL 4393163, at *10 (S.D.N.Y. July 15, 2015) (collecting cases))).

DOE's argument that there is a non-retaliatory reason for its extension of plaintiff's probationary period and denial of tenure "is an issue to be decided on summary judgment, not at the motion to dismiss stage." Reynoso v. All Foods, Inc., 908 F. Supp. 2d 330, 343 (E.D.N.Y. 2012) (quoting Robinson v. Gucci Am., No. 11-cv-3742, 2012 WL 259409, at *6 (S.D.N.Y. Jan. 27, 2012)). Plaintiff's retaliation claims under Title VII and the ADA thus survive defendants' motion to dismiss.

**CONCLUSION**

For the foregoing reasons, defendants' motion to dismiss plaintiff's amended complaint is denied as to plaintiff's religious discrimination claims under Title VII, the NYSHRL, and the NYCHRL; her hostile work environment claims under the NYSHRL and NYCHRL; her disability discrimination claims under the ADA, NYSHRL, and NYCHRL; and her retaliation claims under Title VII and the ADA. Defendants' motion to dismiss is granted as to plaintiff's Title VII hostile work environment claim as well as her NYSHRL and NYCHRL retaliation claims. By separate order, the Court will enter a discovery schedule for the parties to proceed on the remaining claims.

**SO ORDERED.**

_Brian M. Cogan_
U.S.D.J.

Dated: Brooklyn, New York
February 28, 2025