UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------- X

HADAR GAHFI,

Plaintiff,

-against-

NEW YORK CITY DEPARTMENT OF EDUCATION and SHENEAN LINDSAY,

Defendants.

---------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**

23-cv-1782 (BMC)

**COGAN**, District Judge.

This action arises out of a troubled relationship between plaintiff and her employer, defendants New York City Department of Education ("DOE") and Shenean Lindsay, the Community Superintendent for DOE District 17. Plaintiff sued defendants for discrimination, retaliation, and hostile work environment under federal and state law. The Court previously dismissed plaintiff's federal hostile work environment claim, and her state retaliation claims. Defendants now move for summary judgment on the surviving claims. For the reasons below, defendants' motion is granted in part and denied in part.

**BACKGROUND**

Plaintiff, who observes Hasidic Judaism, worked for DOE for over 25 years. For 15 years, plaintiff was the assistant principal ("AP") of Public School 191 ("P.S. 191"), located in DOE District 17, i.e., within Lindsay's purview. In 2018, she was promoted to principal of P.S. 191 and began her mandatory probationary period. See N.Y. Educ. L. § 3012(1)(b); see also Brown v. Bd. of Educ. of Mahopac Cent. Sch. Dist., 129 A.D.3d 1067, 1071, 13 N.Y.S.3d 131, 135 (2nd Dep't 2015) ("[T]he purpose of the . . . probationary period [is] affording a school

district an opportunity to evaluate an individual's performance . . . prior to granting tenure"). Despite plaintiff's numerous requests, DOE did not fill the vacant AP position she left behind.

At one point during her principalship, plaintiff injured herself at work. That day, she saw the school nurse, and separately notified two school administrators. The medical advice that plaintiff was given led her to believe the injury was minor. Around two weeks later, plaintiff realized that the pain was not subsiding and saw her doctor, who told her the injury was more serious than she originally believed. That day, plaintiff notified Lindsay about her injury, stating that she was "in a lot of pain." Around three weeks later, DOE's HR office emailed plaintiff, stating it was "imperative that [she] submit an application for a leave of absence," and provided instructions for applying for paid leave under DOE's Line of Duty Injury ("LODI") policy.

Lindsay denied plaintiff's application for LODI leave on the grounds that plaintiff did not notify Lindsay about her injury within 24 hours of being injured. Instead, plaintiff was allowed to take unpaid medical leave. Consequently, plaintiff expended hundreds of her vacation days, which she accumulated over her career at DOE, to continue receiving pay while she took the needed time off.

While on medical leave, plaintiff received two letters from Lindsay concerning the extension of her probationary period. The first letter was undated, unsigned, and stated:

> Attached is an extension of probation letter. Due to your leave, I have been unable to assess your ability as a leader. Therefore, I would like to extend your probation by one year.
>
> Please sign the attached form. You should scan and email to me by May 9, 2022.

The second letter served the same purpose, although this time, the letter was dated, signed, and about four times longer than the first letter. The second letter described specific instances of plaintiff's conduct that Lindsay said led her to be concerned with plaintiff's "effectiveness and

impact across the school community." Defendants state that the second letter reflects a decision that was "conducted using the Multidimensional Principal Performance Rubric ("MPPR") and Principal Tenure Decision Making Framework" ("PTDMF"). Defendants say nothing about the decision-making leading to the first letter. Notwithstanding, the effect of both letters was defendants' stated intent to deny plaintiff tenure. See Tolbert v. Smith, 790 F.3d 427, 436 (2d Cir. 2015) (By extending a tenure-eligible plaintiff's probationary period by one year, DOE denied plaintiff tenure, regardless of additional year of probationary employment).

Plaintiff returned from medical leave ahead of the 2022-2023 school year. By that time, however, DOE had still not filled the vacant AP position. One of plaintiff's duties as principal was that she held an initial planning conference ("IPC") with each member of her staff at the start of the school year. This now posed a problem because one tenet of plaintiff's religion is that she cannot be alone with men who are not her husband. Generally, a principal would not have to be alone with the staff member at the IPC because the AP could accompany them. But because DOE had not hired a new AP, plaintiff had to seek out another person to accompany her for one such IPC with Mr. Hopeton Burgher, a teacher at P.S. 191.

Plaintiff testified that, before she was supposed to meet with Burgher, she reminded Lindsay of her religious practices, and Lindsay told her to "get thick skin" and "get over herself." Plaintiff testified that this was not the only time Lindsay made such comments. Plaintiff further stated that afterward, in a meeting with Lindsay and two others, "Lindsay reprimanded [plaintiff] for [her] decision not to meet with Burgher alone."

At various points, plaintiff filed internal complaints about the above matters through DOE's Office of Equal Opportunity ("OEO"). Unsatisfied with the results of those complaints, plaintiff ceased working for defendants in January 2023 and thereafter filed the instant suit.

## DISCUSSION

### I. Summary Judgment Standard

Rule 56 provides that summary judgment is warranted where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view all facts "in the light most favorable to the nonmoving party." Scott v. Harris, 550 U.S. 372, 380 (2007). There is no genuine issue of material fact "where the record taken as a whole could not lead a rational trier of fact to find for" plaintiff. See id. (plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts" (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986))); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) ("the mere existence of *some* alleged factual dispute between the parties will not defeat a properly supported motion for summary judgment"). To survive summary judgment, plaintiff must now marshal "concrete evidence from which a reasonable juror could return a verdict in [her] favor." See id. at 256.

### II. Analytical Framework

Plaintiff's discrimination and retaliation claims, brought under Title VII, the ADA, the NYSHRL, or the NYCHRL, are analyzed under the three-step burden shifting framework set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Edelman v. N.Y.U. Langone Health Sys., 141 F.4th 28, 45 (2d Cir. 2025); Hamilton v. City of New York, 563 F. Supp. 3d 42, 52 (E.D.N.Y. 2021) ("Employment discrimination claims are analyzed under the burden-shifting framework set forth in McDonnell"); Bey v. City of New York, 999 F.3d 157, 165 (2d Cir. 2021) ("Like many other discrimination claims, ADA claims are subject to the burden-shifting framework articulated in McDonnell"); Kwan v. Andalex Grp.,

LLC, 737 F.3d 834, 843 (2d Cir. 2013) (Title VII and ADA "retaliation claims are reviewed under the burden-shifting approach of McDonnell").

Although these claims are subject to the same McDonnell framework, the standards for liability vary. See Hamilton, 63 F. Supp. 3d at 52 ("[C]ourts must analyze NYCHRL claims separately" because the "NYCHRL is reviewed more liberally"). "Before 2019, courts in the Second Circuit analyzed NYSHRL discrimination and retaliation claims under the same standard as their federal variant." Owens v. Delta Airlines, Inc., No. 23-cv-2114, 2025 WL 278024, at *4 (E.D.N.Y. Jan. 23, 2025) (distinguishing the standards between claims "brought simultaneously under the ADA, the NYSHRL, and the NYCHRL") (citing Noll v. Int'l Bus. Machs. Corp., 787 F.3d 89, 94 (2d Cir. 2015); Qorrolli v. Metro. Dental Assocs., 124 F.4th 115, 122-23 (2d Cir. 2024) ("The NYSHRL historically utilized the same standard as Title VII, but it was amended in 2019 to align with the NYCHRL").

It is unclear whether the NYSHRL and NYCHRL standards are identical, but it is enough to recognize that the Title VII and ADA standards are more demanding than both the NYSHRL and NYCHRL standards. Consequently, if plaintiff's claims survive summary judgment under Title VII or the ADA, they necessarily survive under the NYSHRL and NYCHRL.

## III. Discrimination

At step one, plaintiff must establish a *prima facie* case of discrimination. Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). If plaintiff succeeds, there is an inference of discrimination that shifts the burden to defendant. Id. at 253 (citing McDonnell, 411 U.S. at 802-03). At step two, defendant must "articulate a legitimate, nondiscriminatory reason for the adverse employment action." Hamilton, 563 F. Supp. at 55. If defendant succeeds, the burden shifts back to plaintiff. At step three, plaintiff must raise a factual issue that the

defendant's offered reasons were a pretext for discrimination, or that her *prima facie* case, even when considered against defendant's evidence, is sufficiently compelling that a jury could reasonably find that she was discriminated against because of her protected status. See Bonaffini v. City Univ. of New York, 751 F. Supp. 3d 67, 74 (E.D.N.Y. 2024).

In determining whether plaintiff has met her burden, the Court must take a "case-by-case" approach that weighs "'the strength of the plaintiff's *prima facie* case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports or undermines the employer's case.'" James v. N.Y. Racing Ass'n, 233 F.3d 149, 156 (2d Cir. 2000) (quoting Reeves v. Sanderson Plumbing Prods. Inc., 530 U.S. 133, 148-49 (2000) (cleaned up)). "In short, the ultimate burden rests with the plaintiff to offer evidence 'sufficient to support a reasonable inference that prohibited . . . discrimination occurred.'" Woodman v. WWOR-TV, Inc., 411 F.3d 69, 76 (2d Cir. 2005) (quoting James, 233 F.3d at 156).

**A. Religious Discrimination**

Plaintiff contends that defendants' refusal to hire an AP after plaintiff was promoted to principal at P.S. 191 constitutes religious discrimination. Plaintiff also points to disparaging comments made by Lindsay, and Lindsay's refusal to provide plaintiff with Kosher food at meetings.[1] Plaintiff's theory is that defendants' refusal to hire an AP was motivated by religious animus, as shown by the disparaging comments and refusals to provide Kosher food.

[1] Plaintiff does not, and could not, pursue a failure-to-accommodate theory for defendants' refusal to hire an AP. Hiring a full-time AP so that plaintiff could have someone join her for one meeting would not be reasonable; merely allowing her to have someone in the room with her, as she did here, would be enough. Likewise, plaintiff does not, and could not, pursue a failure-to-accommodate theory for defendants' failure to provide her with Kosher food at staff meetings. Plaintiff testified that she was not prevented from bringing her own Kosher food to these meetings, which is a reasonable accommodation by itself. See, e.g., Gerzhgorin v. Selfhelp Cmty. Servs., No. 18-cv-04344, 2021 WL 8013836, at *19 (E.D.N.Y. Mar. 2, 2021) (no discriminatory treatment even crediting plaintiff's allegations that he "had to bring his own kosher food to the [company] party and was ridiculed by [a supervisor] for keeping kosher"), report and recommendation adopted in part, 2022 WL 912523 (E.D.N.Y. Mar. 29, 2022), aff'd, No. 22-808, 2023 WL 2469824 (2d Cir. Mar. 13, 2023).

*i. Title VII*

***Step One.*** To establish a *prima facie* case of religious discrimination based on disparate treatment under Title VII, plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for the position she held; (3) she suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination. Ruiz v. Cnty. of Rockland, 609 F.3d 486, 492 (2d Cir. 2010). Only the third and fourth elements are disputed here.

Plaintiff has not shown that defendants' action was adverse because it did not cause any "harm respecting an identifiable term or condition of [her] employment." See Muldrow v. City of St. Louis, 601 U.S. 346, 355 (2024). With or without an assistant principal, a promotion that is voluntarily accepted (presumably for a higher salary) is not adverse. Plaintiff did not have to accept the promotion; if she liked being an AP better than she liked being a principal, there is nothing in the record to suggest she could not have maintained that position.[2]

Conceivably, plaintiff's promotion without assignment of an assistant principal, if compared to plaintiff's predecessor, could suggest "circumstances giving rise to an inference of discrimination" under step one of McDonnell. Her argument would be that refusing to assign her an AP disproportionately increased her workload compared to her predecessor, who had an AP for the preceding 15 years. See Kirkland-Hudson v. Mount Vernon City Sch. Dist., 665 F. Supp. 3d 412, 460 (S.D.N.Y. 2023) ("[In] the discrimination context, a [p]laintiff must show an assigned workload was 'disproportionately heavy' to constitute an adverse employment action"

[2] Plaintiff contends that defendants were contractually obliged to assign her an AP when she became principal, but that is meritless. Her argument is based on a 2019 modification to the relevant collective bargaining agreement, which states: "DOE and the CSA agree that it is generally best practice to have at least one Assistant Principal per school." Best practice is a far cry from a contractual obligation, and plaintiff's adverse action argument on that ground fails.

(quoting Grana v. Potter, No. 06-cv-1173, 2009 WL 425913, at *12 (E.D.N.Y. Feb. 19, 2009))). However, both the third and fourth elements of the required showing for a *prima facie* case require an adverse employment action before any consideration of circumstances that might give rise to an inference of discrimination, and a promotion is just not adverse. Plaintiff accepted the position of principal, the duties of which did not require having an AP. The fact that her predecessor had one is irrelevant to the determination of whether her promotion was adverse.

Even assuming, *arguendo*, that plaintiff's promotion was somehow an adverse employment action, the circumstances under which defendants elected not to hire an AP could not give rise to the inference of discrimination. The most glaring deficiency is that the alleged adverse action is based on plaintiff's promotion to principal. Discrimination claims typically relate to "discrete actions such as 'termination, failure to promote, denial of transfer, or refusal to hire[.]" Banks v. GM, LLC, 81 F.4th 242, 259 (2d Cir. 2023) (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114-15 (2002)). If defendants harbored any discriminatory animus against plaintiff, she wouldn't have been promoted in the first place. The subsequent decision to not hire an AP, when plaintiff had no right to an AP, cannot reasonably give rise to the inference of discrimination.

The inquiry could end there. But even assuming plaintiff made a *prima facie* case, her religious discrimination claims would not survive summary judgment because, as discussed below, they would fail on step three.

***Step Two.*** Assuming there was an inference of discrimination, defendants easily rebut it. Simply put, defendants have produced evidence showing that the DOE budget would not allow for hiring a new AP at P.S. 191. Defendants support this with emails between plaintiff and DOE's Finance & HR Senior Manager. In one such email, DOE's HR/Finance office described

to plaintiff how two other DOE employees "reviewed [plaintiff's] budget . . . from every angle possible and [determined that] at this time we cannot move forward with the request."

***Step Three.*** Plaintiff cannot demonstrate a genuine issue of material fact as to whether defendants' budget-based justification was pretextual. Plaintiff points to non-Hasidic principals of other schools that had an AP, contending that this shows defendants' discrimination. That alone was enough to survive defendants' motion to dismiss, see Gahfi v. N.Y.C. Dep't of Educ., No. 23-cv-1782, 2025 WL 675933, at *5 (E.D.N.Y. Feb. 28, 2025), but it is not enough on summary judgment. Defendants have provided evidence showing that plaintiff's request for an AP was denied because her school had low enrollment and therefore the DOE budget would not allow for an AP. Plaintiff offers nothing to suggest that this was pretextual.

Accordingly, defendants' motion for summary judgment is granted as to plaintiff's religious discrimination claims under Title VII.

*ii. NYSHRL and NYCHRL*

"Under the forgiving standard of the NYCHRL and the amended NYSHRL, even 'a single comment . . . may be actionable,' though summary judgment may be appropriate where 'a reasonable jury could conclude only that the conduct amounted to no more than a petty slight,' based on the totality of the circumstances." Nofal v. IMCMV Times Square LLC, No. 22-cv-3104, 2024 WL 1138928, at *5 (S.D.N.Y. Mar. 15, 2024) (quoting Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 111 (2d Cir. 2013)).

Although Lindsay's alleged comments that plaintiff "get thick skin" and "get over herself" may be "insensitive and offensive, [they are] not dissimilar from behavior found by courts in this Circuit to be no more than a petty slight for purposes of the NYCHRL, and thus, not actionable." See id.; see also Livingston v. City of New York, 563 F. Supp. 3d 201, 223,

233-35, 255 (S.D.N.Y. 2021) (Supervisor's comments that an Orthodox Jewish employee's observance of the Sabbath was "unacceptable" and that the employee "can't be missing Saturdays" only "amount[ed] at most to petty slights" under the NYCHRL).

Accordingly, defendants' motion for summary judgment is granted as to plaintiff's religious discrimination claims under the NYSHRL and NYCHRL.

**B. Disability Discrimination**

Plaintiff contends that defendants discriminated against her by seeking to extend her probationary period at the cusp of its expiration, at which time she would be eligible for tenure. Her theory is that the denial of her tenure was an adverse action taken because she took medical leave after being injured at work.

Plaintiff raises a separate failure-to-accommodate theory based on defendants' denial of her LODI leave request. That theory is meritless, however, because it is undisputed that defendants permitted her to take another, albeit unpaid, medical leave, and the "ADA generally recognizes medical leaves as reasonable accommodations." See Rogers v. N.Y. Univ., 250 F. Supp. 2d 310, 317 (S.D.N.Y. 2002). Surely, allowing plaintiff to take paid leave would have been preferrable to her, but that is not what the ADA requires. See Schroeder v. Suffolk Cnty. Cmty. Coll., No. 07-cv-2060, 2009 WL 1748869, at *10 (E.D.N.Y. June 22, 2009) ("In fashioning a reasonable accommodation, employers need not accommodate an employee in the exact manner that the employee requests or provide the employee with the 'best' possible accommodation.") (citing 29 C.F.R. Pt. 1630, App. § 1630.9). Thus, the Court will only consider plaintiff's adverse action theory.

***Step One.*** "To establish a *prima facie* case of discrimination under the ADA, a plaintiff must show by a preponderance of the evidence that: (1) [her] employer is subject to the ADA; (2) [she] was disabled within the meaning of the ADA; (3) [she] was otherwise qualified to

perform the essential functions of [her] job, with or without reasonable accommodation; and (4) [she] suffered adverse employment action because of [her] disability." See Woolf v. Strada, 949 F.3d 89, 93 (2d Cir. 2020). Only the fourth element is disputed here and, as with plaintiff's religious discrimination claim, there are two questions: whether the action was adverse and, if so, whether that adverse action was taken because of plaintiff's disability.

Denying plaintiff's tenure was "assuredly an adverse employment action." Tolbert, 790 F.3d at 436. Lindsay, relying on her own deposition testimony, continues to argue that she "did not deny [plaintiff] her tenure" because "deny[ing] tenure . . . means the person is terminated." But Lindsay's description is not fully accurate.

Under New York law, at the end of a DOE probationary period, the superintendent is supposed to decide whether to terminate the employee or recommend the employee for tenure. See N.Y. Educ. L. § 3012(2)(b). If those were the only two possible outcomes, Lindsay might be correct. But the law recognizes situations where a DOE employee can be granted tenure without being recommended by the superintendent, see Dent v. N.Y.C. Dep't of Educ., No. 22-cv-5357, 2024 WL 3362211, at *19 (E.D.N.Y. Mar. 1, 2024) (discussing "[t]enure by estoppel"), and situations where a DOE employee can be denied tenure without being terminated. See Tolbert, 790 F.3d at 436 ("Extending an employment relationship by one year" constitutes "the denial of tenure [if the] teacher was otherwise eligible for tenure, [even though] the teacher is provided with another year of probationary employment."). In any event, the Court has already rejected this argument. See Gahfi, 2025 WL 675933, at *5 ("DOE's denial of tenure . . . constitutes an adverse employment action" because "[t]he denial of tenure after three years, when [plaintiff] was otherwise eligible for tenure, does not become any less an adverse action because [plaintiff] is provided with another year of probationary employment.") (citations omitted).

Drawing "all reasonable inferences against the movant," Brod, 653 F.3d at 164, the circumstances under which defendants extended plaintiff's probationary period give rise to the inference of discrimination. When Lindsay first notified plaintiff of her intent to extend plaintiff's probationary period, she expressed concern for plaintiff's "ability as a leader." But the only factual predicate for that concern in Lindsay's three-sentence message was plaintiff having taken medical leave. In other words, the letter plausibly reads as if Lindsay was concerned with plaintiff's leadership skills because she took medical leave. That is enough for plaintiff's *prima facie* case.

***Step Two.*** Defendants quickly counter this inference with a facially neutral justification. That justification is recounted in Lindsay's second letter to plaintiff, which described specific conduct by plaintiff that Lindsay believed showed that plaintiff's "leadership and community-building . . . needs further development." The second letter separately stated that the probationary period was being extended due to "insufficient evidence to assess [plaintiff's] effectiveness and impact across the school community based on the MPPR and [PTDMF]." The logical reading of that is that there was insufficient evidence for that assessment because plaintiff had been away for so long – on medical leave.

***Step Three.*** Plaintiff "has presented just barely enough evidence of pretext to survive summary judgment." See Privler v. CSX Transp. Inc., No. 18-cv-1020, 2021 WL 3603334, at *15 (N.D.N.Y. Aug. 13, 2021); see also Rosen v. Thornburgh, 928 F.2d 528, 533 (2d Cir. 1991) ("[W]here a defendant's intent and state of mind are placed in issue, summary judgment is ordinarily inappropriate."). Plaintiff is able to show this by the mere existence of the first letter from Lindsay, which was short, curt, unsigned, and only told plaintiff that her "ability as a leader" was being questioned "[d]ue to [her] leave." The second letter was more "corporate" in

tone, and recounted specific examples purportedly justifying Lindsay's concern for plaintiff's professional skills. Viewed in the light most favorable to plaintiff, a reasonable jury could interpret this sequence of events to mean that Lindsay realized the impropriety of her first letter and sought to conceal that impropriety by sending the second letter. This sufficiently raises a genuine dispute as to whether the reasons stated in the second letter were pretextual.

Accordingly, defendants' motion for summary judgment is denied as to plaintiff's disability discrimination claims under the ADA, NYSHRL, and NYCHRL.

## IV. Retaliation

Plaintiff contends that the denial of her tenure also constitutes retaliation under the ADA and Title VII. Her theory is that defendants retaliated against her for filing a complaint about the conduct underlying her religious and disability discrimination claims, described above.

***Step One.*** To "establish a *prima facie* case [of retaliation, plaintiff] must show '(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.'" Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005) ("[T]his initial burden is satisfied [if the] proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive") (quotations omitted). Defendants concede that plaintiff participated in protected activity by filing complaints with the OEO, the first of which detailed the conduct now underlying plaintiff's religious and disability discrimination claims. Plaintiff filed that complaint two months before Lindsay notified plaintiff about extending plaintiff's probationary period and denying her tenure. Because the Court has already determined that the denial of plaintiff's tenure was an adverse action, only the second and fourth elements are at issue.

Defendants' dispute the knowledge element because Lindsay, who took the adverse action at issue, was not aware of plaintiff's complaints. But that does not matter because defendants had "general corporate knowledge" by virtue of the complaint being submitted on DOE's own platform. See Kwan, 737 F.3d at 844. Indeed, whether Lindsay herself had knowledge is irrelevant. See Papelino v. Albany Coll. of Pharmacy of Union Univ., 633 F.3d 81, 92 (2d Cir. 2011) ("Even if the [DOE's] agents who carried out the adverse action did not know about the plaintiff's protected activity, the 'knowledge' requirement is met if the legal entity was on notice.").

The causation requirement is met because the two-month difference between plaintiff filing one of her OEO complaints and the denial of her tenure "is sufficiently short to make a *prima facie* showing of causation indirectly through temporal proximity." Kwan, 737 F.3d at 845; see also Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 110 (2d Cir.2010) ("for the purposes of a *prima facie* case . . . five months is not too long to find the causal relationship.").

***Step Two.*** As discussed above, defendants have met their burden in articulating legitimate, and in this case non-retaliatory, reasons for extending her probationary period, stated in Lindsay's second letter to plaintiff.

***Step Three.*** "Temporal proximity alone is insufficient to defeat summary judgment at the pretext stage." Kwan, 737 F.3d at 847. Plaintiff must show more, "such as inconsistent employer explanations," to survive summary judgment. See id. As discussed above, plaintiff has already shown that defendants' reasons for the extension stated in the second letter are inconsistent with the reasons stated in the first letter. Thus, a reasonable jury could find that the facially neutral reasons are pretextual.

Accordingly, defendants' motion for summary judgment is denied as to plaintiff's retaliation claims under the ADA and Title VII.

## V. Hostile Work Environment

Unlike the rest of her claims, plaintiff's NYSHRL and NYCHRL hostile work environment claims are not subject to the McDonnell framework. To "survive a motion for summary judgment," a "plaintiff alleging a hostile work environment must bring forth more than a mere scintilla of evidence." Brown v. Montefiore Med. Ctr., No. 19-cv-11474, 2024 WL 1367974, at *7 (S.D.N.Y. Mar. 30, 2024). To prevail under "[t]he NYSHRL and the NYCHRL['s] lower standard for showing hostile work environment" plaintiff "need only show differential treatment," i.e., being "treated less well because of a discriminatory intent." Id. (quoting Mihalik, 715 F.3d at 110); see also Garrison v. Am. Sugar Refin., Inc., 789 F. Supp. 3d 291, 312-13 (S.D.N.Y. 2025) ("[U]nder the NYSHRL, a plaintiff must establish that [she] was 'subjected to inferior terms, conditions, or privileges of employment because of [her] membership in one or more protected categories.'" (quoting Tortorici v. Bus-Tev, LLC, No. 17-cv-7507, 2021 WL 4177209, at *13 (S.D.N.Y. Sept. 13, 2021))).

Plaintiff contends that all of defendants' actions, described above, contributed to a hostile work environment. Plaintiff further points to defendants' denial of her LODI leave request. According to Lindsay, plaintiff's LODI leave was denied because "a timely report of the at-work incident must be reported . . . within 24 hours of the alleged injury" and plaintiff's failure to do so was dispositive. But such a strict application of the policy is inconsistent with the policy itself, which provides that the 24-hour rule does not apply when "reasonable grounds exist for a delay."[3] Moreover, it was over a month after plaintiff's injury when DOE's HR office emailed

[3] Defendants do not cite or provide a copy of this policy, but they do quote the relevant language in an exhibit attached to their motion, a "DOE Position Statement" prepared by defendants' counsel. It is possible that defendants

plaintiff with instructions and directions to apply for LODI leave. Nonetheless, Lindsay denied the leave, citing the 24-hour rule, forcing plaintiff to instead use her vacation days, accumulated over her entire career, to receive pay while taking the necessary time off.

Plaintiff further points to Lindsay's offensive comments and unwarranted negative remarks on her performance evaluations. If plaintiff's hostile work environment claim was predicated only on these actions, her claims might not survive summary judgment. See Kaur v. N.Y.C. Health & Hasps. Corp., 688 F. Supp. 2d 317, 340 (S.D.N.Y. 2010) (summary judgment on a hostile work environment claim is warranted when "the conduct [p]laintiff complains of can only be interpreted reasonably as petty slights and trivial inconveniences"). But here, a reasonable jury could find that Lindsay's comments, unwarranted negative feedback, and seemingly arbitrary denial of plaintiff's LODI leave, compounded the negative effects of the conduct that underlies plaintiff's other claims. In other words, "a reasonable jury could find that the totality of the circumstances established an unlawful hostile work environment," see Williams v. N.Y.C. Hous. Auth., 61 F.4th 55, 60 (2d Cir. 2023), under the NYSHRL and NYCHRL.

Accordingly, defendants' motion for summary judgment is denied as to plaintiff's hostile work environment claims under the NYSHRL and NYCHRL.

are referring to NYCDOE Personnel Memorandum No. 4, 2002-2003 (Oct. 24, 2002), which states that DOE employees "should report any such accident/incident to the principal, principal's designee or responsible supervisor before the close of business on the day of the incident/accident, but no later than twenty-four hours after the accident/incident has occurred, unless reasonable grounds exist for failure to report within these time limits."

## CONCLUSION

For the foregoing reasons, the Court grants defendants' motion for summary judgment as to plaintiff's religious discrimination claims. The Court denies defendants' motion for summary judgment as to plaintiff's disability discrimination, retaliation, and hostile work environment claims.

**SO ORDERED.**

Brian M. Cogan

U.S.D.J.

Dated: Brooklyn, New York
January 19, 2026